THE GEORGE B. SWIFT COMPANY

*v.*

LUCIAN E. GAYLORD, Admr.

*Opinion filed October 23, 1907.*

1. LIMITATIONS—*rule stated as to amended count.* If a suit is brought in apt time and a declaration duly filed stating a cause of action, although imperfectly, subsequent amendments, though filed after the Statute of Limitations has run, will not be thereby barred if they amount to no more than a re-statement, in different form, of the cause of action originally declared upon, but it is otherwise if they set up a distinct cause of action.

2. SAME—*what constitutes the cause of action in a personal injury case.* In a personal injury case the cause of action is the thing done or omitted to be done by the defendant which gives the plaintiff the right to pursue the remedy given to him by law.

3. SAME—*when original and amended counts state same case.* Original and amended counts in an action for personal injury state the same cause of action where the omission of duty charged in each against the defendant, although in varying language, is the failure to so construct a certain derrick in use upon a building as to make it reasonably and suitably safe for the use for which it was intended, and the particular act of negligence charged is the failure to have the arm or beam of the derrick so securely placed and fastened that it would not give way to the pressure upon it.

4. TRIAL—*when the refusal to direct a verdict is proper.* It is proper to refuse to direct a verdict for the defendant in an action for damages for the death of an employee working about a derrick used in hoisting lumber to the top of a building, where there is evidence tending to show that the deceased was in the exercise of due care, but that the derrick was not properly braced to withstand the strain which defendant might reasonably have expected it would be subjected to in view of the manner in which it was operated.

5. DAMAGES—*expectation of life of deceased and next of kin may be considered.* Even though there is no legal claim for pecuniary aid, the deceased being an adult and the next of kin his father and mother, yet if there is actual loss of pecuniary aid, the jury, in estimating the amount of such loss, may consider the probable length of the respective lives of deceased and such next of kin.

6. MASTER AND SERVANT—*a servant has burden of proving his lack of notice of defect.* One of the essential elements which must be proved by a servant to entitle him to recover damages from the

master for an injury from a defect is that he did not have knowledge of such defect, and while such want of knowledge may be inferred from circumstances proven, yet, by whatever evidence the fact may be shown, the burden in that regard rests upon the plaintiff, and not upon the defendant.

7. INSTRUCTIONS—*instruction stating that master has burden of showing a servant's notice of defect is erroneous.* An instruction holding, in effect, that a servant may, in the absence of notice, rely upon the presumption that the master has done his duty in furnishing reasonably safe appliances and surroundings, and that the burden of proving that the servant had actual notice of a defect is upon the master, is erroneous. (*C. & E. I. R. R. Co.* v. *Hines,* 132 Ill. 161, and *City of LaSalle* v. *Kostka,* 190 id. 130, distinguished.)

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. E. C. GRAVES, Judge, presiding.

The circuit court of Rock Island county rendered a judgment for $5000 in favor of appellee, against appellant, for negligently causing the death of plaintiff's intestate, and that judgment has been affirmed by the Appellate Court.

The action was brought to the January term, 1904, of said circuit court against this appellant, the Chicago, Rock Island and Pacific Railway Company and the Rock Island Improvement Company. The original declaration consisted of a single count, which alleged that the death occurred on September 22, 1903. After the expiration of one year from that date the plaintiff filed an amended declaration of seven counts, to which the defendants filed a plea of not guilty and also a special plea to each count setting up the one-year Statute of Limitations. The plaintiff demurred to each of the special pleas. This demurrer having been overruled, he then filed a second amended declaration consisting of four counts, to which the defendants again pleaded the general issue and special pleas of the Statute of Limitations. The plaintiff again demurred to each of the special pleas. This demurrer was sustained and a jury was empaneled for the

trial of the cause. During the progress of the trial plaintiff, by leave of the court, dismissed his suit against the other defendants and filed another amended declaration of four counts against appellant alone, to which appellant filed a plea of the general issue and special pleas of the Statute of Limitations. Plaintiff demurred to the special pleas, his demurrer was sustained and the trial proceeded, with the result above stated.

JACKSON, HURST & STAFFORD, for appellant.

J. B. & J. L. OAKLEAF, and J. T. & S. R. KENWORTHY, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

It is contended that the court erred in sustaining the demurrer to the pleas of the Statute of Limitations filed to the amended declaration. The statute provides that every action to recover damages for the death of a person caused by another's wrongful act shall be commenced within one year after such death, and the amended declaration in this case having been filed more than one year after the death of plaintiff's intestate, the action was barred unless the cause of action set forth in the amended declaration was the same as that declared upon in the original declaration.

Counsel for appellant earnestly insist that the causes of action set up in the several counts of the amended declaration are entirely new and distinct from that declared upon in the one count of the first declaration. It is well settled that if a suit is brought in apt time and a declaration duly filed stating the cause of action, though imperfectly, subsequent amendments, though filed after the Statute of Limitations has run, will not be barred thereby if they amount to no more than a re-statement, in a different form, of the cause of action originally declared upon. (*North Chicago Rolling Mill Co.* v. *Monka,* 107 Ill. 340.) But if the

amended counts set up an entirely new and distinct cause of action the Statute of Limitations may be successfully pleaded thereto. *Phelps* v. *Illinois Central Railroad Co.* 94 Ill. 548; *Eylenfeldt* v. *Illinois Steel Co.* 165 id. 185.

The first declaration in this case alleged that the defendants were engaged in the business of erecting a building and the deceased was in their employ, and the defendants were in the act of hoisting lumber from the ground to the top of said building, using a derrick for that purpose, it being the duty of the deceased to receive the lumber on the top of the building, and while he was in the act of performing such duty, exercising due care, the derrick gave way and broke, by means whereof plaintiff's intestate was then and there instantly killed. The declaration then proceeded: "And the plaintiff further avers that said defendants, a short time prior to the killing of plaintiff's intestate, as aforesaid, had erected and constructed said derrick or hoist for the purpose of hoisting lumber, as aforesaid, and in the erection of said derrick or hoist, and the placing of the same, had negligently omitted to properly place, fasten and secure the same, in this: they had neglected and omitted to properly and securely place the arm of said derrick or hoist which held the pulley over which the rope attached to said derrick or hoist ran, so that when applying the power to hoist the said lumber, as aforesaid, and while said lumber was about up to the top of said building, ready for the plaintiff's intestate to take when so hoisted, the said derrick or hoist gave way and the said lumber and derrick fell upon the plaintiff's intestate," etc.

The amended declaration upon which the trial was had, as already stated, contained four counts. The first alleged that the defendant carelessly and negligently built said derrick and omitted to properly place, fasten and secure the same, so that when the weight of the lumber to be hoisted thereby was placed upon the arm of the derrick it broke and gave way, and the defendant had neglected and omitted to

properly secure the arm of said derrick, so that when the power was applied to hoist the lumber it gave way. The second averred that the negligence of the defendant consisted in not sufficiently bracing, securing, nailing, bolting and fastening the beam of said hoisting apparatus so as to prevent the same from falling when a load to be hoisted was heavy, or might be caught, as it was liable to do, upon or against the said iron cross-beams when being hoisted, as aforesaid. The third sets up that the defendant was negligent and careless in fastening and constructing the beam of said derrick, and that the same was not safely and properly braced, nailed, bolted and fastened to sustain the weight of the hoisting of said timbers and lumber in the manner and form the same were being hoisted, as aforesaid, and was not sufficient to sustain the weight that would come upon the same in the event said timbers and lumber should be caught on said iron cross-beams while being so hoisted in the manner and form aforesaid. And the fourth alleged that the defendant caused and permitted said derrick or hoisting apparatus to be negligently and carelessly built and constructed, in this: that said derrick beam, and its supports and braces, were not sufficiently and properly braced, bolted, placed, nailed, built, adjusted and fastened so as to prevent the same from falling when in use in the hoisting of said lumber, as aforesaid.

It will be seen that each of these counts rests upon the alleged failure of the defendant to properly nail, brace and fasten the arm of said derrick. In cases of this kind the cause of action is the act or thing done or omitted to be done by one which confers the right upon another to sue,— in other words, the act or wrong of the defendant towards the plaintiff which causes a grievance for which the law gives a remedy. (*Swift & Co.* v. *Madden,* 165 Ill. 41.) Here the omission of duty charged against the defendant, both by the original and amended declarations, was the failure to so construct the derrick in use upon the building as

to make it reasonably suitable and safe for the use for which it was intended, and the particular negligence was the failure to have the arm so securely fastened that it would not give way to the pressure upon it.

Special attention is called by appellant's counsel to the use of the word "place," in the first declaration, in connection with the arm of the derrick, as limiting the issue to the single point of negligence in placing the arm of the derrick. The words used are, "neglected and omitted to properly and securely place," and they mean that the defendant neglected to properly put the derrick in position in a safe manner, secure against the strain to which it might be subjected. Under this allegation any evidence would have been admissible which was admissible under the amended declaration or which was admitted on the trial. Evidence that the snatch-block on the ground, instead of being directly under the derrick was on one side, which was the side which was not braced, was admissible, not as evidence of an independent act of negligence, but as showing the additional strain to which the arm would thereby be subjected and the necessity that it should be "securely placed."

The counts in the amended declaration did not set up any new cause of action, but merely amplified the statement of that alleged in the first declaration and changed the form of its expression.

It is next urged that the jury should have been instructed to find a verdict for the defendant. The walls of the building on which the deceased was working had been completed and workmen were engaged in laying the roof, at a height of from forty to fifty feet from the ground, when the accident occurred. A derrick set on the roof was used to hoist lumber from the ground. Deceased was engaged in carrying lumber from the derrick to the carpenters laying the roof. The arm of the derrick, extending from north to south, was a timber four inches by six and about twenty-two feet long, the lower end being lashed to a joist in the roof and the

upper end passing over a post about seven feet high, set at the edge of the opening in the roof through which the lumber was to pass as it came up, the upper end of the arm extending out over the opening. Near the top of the arm was fastened a pulley, through which a hoist-rope passed down to a snatch-block on the ground, and thence along the ground, turning corners at several points, several hundred feet to a hoist engine. This engine was located out of sight of the men engaged in raising the lumber, and signals given by employees stationed at different points were necessary to communicate with the engineer. Several pieces of lumber were fastened together at the bottom of the hoist and the signal given to raise them to the roof. A guide-rope was fastened to this lumber for the purpose of guiding it through the opening in the roof and prevent it from being caught under the girders. At the time of the accident, however, it either caught beneath the roof, upon the girders which formed the sides of the opening, or passed through the opening and caught upon the pulley-block, and the engine failing to stop, the continued application of the power caused the braces to give way and the derrick fell to the east, on which side there was no brace, striking the deceased upon the head, killing him instantly. The engineer could not see the timbers being hoisted or the men engaged in the work or know whether the timbers went through the opening in the roof. He had to depend upon signals, repeated by two other employees of appellant, as to when he should hoist and when stop. The timber might be expected to catch on the edge of the opening in the roof, or, if the power was not stopped in time, to be carried to the top of the derrick. In either case there would be a severe additional strain upon the arm of the derrick, which it should be secured to withstand. There was evidence tending to show that the derrick was not braced to withstand the strain incident to the purpose for which it was used and that in consequence it gave way, and the deceased, while in the exercise of ordinary

care for his own safety, was killed. The instruction to find for the defendant was properly refused.

The first instruction given on behalf of the plaintiff informed the jury that if they "believed, from the evidence, that the derrick or hoist mentioned in the declaration was negligently constructed and fastened by the defendant, as stated in the declaration, and that plaintiff's intestate had no knowledge of said negligent construction, and that he could not, by the exercise of ordinary care for his own safety, have acquired such knowledge, and was an employee of the defendant, and while in the exercise of due care was killed by the derrick falling on him by reason of its negligent construction, as stated in the declaration, and that by his death his next of kin sustained pecuniary injury, then the jury should find their verdict for the plaintiff, although they may believe, from the evidence, that the immediate cause of the falling of the derrick was the combined result of the negligent construction of the derrick and the carelessness of those employees of the defendant engaged in hoisting the lumber." It is objected to this instruction that it is misleading in not negativing the fact that the deceased was one of the employees engaged in hoisting the lumber, and that it tells the jury a recovery may be had although the deceased's own negligence, as an employee engaged in hoisting the lumber, contributed to his injury. The instruction is not subject to this construction. It required by its terms that the deceased should have been himself in the exercise of due care.

The third instruction informed the jury that they might take into consideration the reasonable expectation of life of the deceased and of his next of kin in estimating their pecuniary loss by his death, and it is objected that the mere expectation of life was not proper to be considered in this case where there was no legal claim for pecuniary aid, the deceased being an adult and the next of kin his father and mother. If there was an actual loss of pecuniary aid, one element in determining its amount was the length of time

229—22

such aid might be expected to continue, and while it might
be terminated by many contingencies other than the death
of the giver or the receiver, yet the probable length of their
respective lives was proper to be taken into consideration in
estimating the amount.

The fifth instruction was as follows:

"The court further instructs the jury, as a matter of law,
that a servant may, in the absence of notice and when he is
in the exercise of reasonable care for his own safety, rely
upon the presumption that the master has done his duty in
furnishing all reasonably safe appliances and surroundings
to his servant to enable him to perform the service engaged
to be performed, and that the burden of proving that Gay-
lord had actual notice of the defective construction of the
derrick or hoist, if it was so, is upon the defendant, and if
the evidence fails to establish such notice to the said Gay-
lord, then the presumption is Gaylord relied upon the per-
formance of the said legal duty of the master and had no
such notice, if the jury believe, from the evidence, that the
relation of master and servant existed between Gaylord and
the George B. Swift Company."

This court, in the case of *Goldie* v. *Werner,* 151 Ill. 551,
assumed the rule of law in respect to the burden of proof
in an action by a servant against the master for an injury
resulting from defective appliances to be as stated in Wood
on Master and Servant, section 414: "The servant, in order
to recover for defects in the appliances of the business, is
called upon to establish three propositions: First, that the
appliance was defective; second, that the master had notice
thereof, or knowledge, or ought to have had; third, that
the servant did not know of the defect and had not equal
means of knowing with the master." The same rule was
recognized in the cases of *Karr Supply Co.* v. *Kroenig,* 167
Ill. 560, *Chicago and Alton Railroad Co.* v. *Scanlan,* 170 id.
106, *Hines Lumber Co.* v. *Ligas,* 172 id. 315, and *Howe* v.
*Medaris,* 183 id. 288. In the latter case the rule was stated

to be the well settled law of the State. In *Lake Erie and Western Railroad Co.* v. *Wilson,* 189 Ill. 89, two instructions given at the instance of the plaintiff directed a verdict for her. The judgment in her favor was reversed and the giving of the instructions held to be error because neither instruction embraced the proposition that the plaintiff was bound to prove that the deceased did not know of the defect causing the injury and had not equal means of knowing with the master. And in *Armour* v. *Brazeau,* 191 Ill. 117, the judgment was reversed, and it was held error to refuse an instruction imposing upon the plaintiff the burden of proving the existence of the defect and that it caused the injury, defendant's knowledge, plaintiff's lack of knowledge and of means of knowledge equal to the defendant's, and that plaintiff was in the exercise of ordinary care. The same rule is announced or recognized in other cases. *Chicago and Eastern Illinois Railroad Co.* v. *Heerey,* 203 Ill. 492; *Momence Stone Co.* v. *Turrell,* 205 id. 515; *Sargent Co.* v. *Baublis,* 215 id. 428; *Montgomery Coal Co.* v. *Barringer,* 218 id. 327; *McCormick Harvesting Machine Co.* v. *Zakzewski,* 220 id. 522.

The case of *Chicago and Eastern Illinois Railroad Co.* v. *Hines,* 132 Ill. 161, has been referred to as sustaining this instruction, but the subject matter there under consideration was the sufficiency of the declaration to support the judgment after a demurrer had been overruled and trial had. What the court held was, that the allegation of due care in the deceased negatived negligence, and, by implication, that he had knowledge of the defects by reason of which he was injured, and that it was therefore sufficient on error. And in the case of *City of LaSalle* v. *Kostka,* 190 Ill. 130, it was held that the allegation of the declaration that the plaintiff was using due and ordinary care for his own safety was a sufficient allegation that he did not know, and had no opportunity of knowing, the defective conditions to justify an instruction that if he had made out his case as laid in the

declaration, by a preponderance of the evidence, he should have a verdict. In the first case it is said that it is matter of defense that the deceased had knowledge of the defects through which his injuries were received, and this is quoted in the second case. But it was merely argument in either case. If the allegation of due care negatived knowledge of the defect, then, in order to sustain the allegation, the plaintiff would be required to prove want of knowledge. There is some conflict of authority concerning the burden of proof in such cases. In some of the States the rule is different from that which prevails in this State. In actions for personal injuries it has always been held in this State that the plaintiff must allege and prove that he was free from negligence contributing to the injury. It is said in Thompson on Negligence, (vol. I, sec. 368,) that in those jurisdictions where the burden rests on the plaintiff to prove his freedom, or the freedom of the person killed or injured, from contributory negligence, the rule, by analogy, is, that the burden will rest upon the employee of proving that he did not accept the risk of the employment, and the want of knowledge of the danger must be averred and proved,—and such has been the rule in this State. It is true that to charge the servant with negligence he must not only know, or have the means of knowing by the exercise of ordinary care, of the defect, but must also know that the defect renders the appliance unsafe to use, and he is not bound to make an inspection for latent defects. Where want of knowledge is not susceptible of direct proof it may be inferred from circumstances, and the plaintiff may be aided by the presumption that a person does not voluntarily incur danger or the risk of death. Knowledge or want of knowledge of a defect may be inferred from the circumstances, but by whatever evidence the fact must be shown, the burden of proof in that regard rests upon the plaintiff. By the fifth instruction the jury were told that this burden was on the defendant. The second instruction is also subject to criticism for omitting

the element of the deceased's knowledge or means of knowledge of the alleged defect.

For the error of the circuit court in giving the second and fifth instructions, its judgment, and that of the Appellate Court, will be reversed and the cause remanded to the circuit court for a new trial.    *Reversed and remanded.*

FARMER and VICKERS, JJ., took no part in the decision of this case.