**Julia A. Ross, Administratrix, Appellee, v. Chicago, Rock Island & Pacific Railway Company, Appellant.**

**Gen. No. 5,101.**

1. APPEALS AND ERRORS—*when order sustaining demurrer not subject to review.* There being no motion in arrest of judgment in the trial court and no assignment of error filed in the Appellate Court having any reference to the pleadings or to any action of the trial court thereon, the action of such trial court in sustaining a demurrer to counts of the declaration is not subject to review.

2. APPEALS AND ERRORS—*what not considered on review.* The record of a former appeal in the cause not embodied in the tran-

script will not be considered in order to determine whether a particular criticism was made of an instruction upon such former hearing.

3. MASTER AND SERVANT—*when negligence of fellow-servants will not defeat recovery.* If the negligence of the master was the efficient cause of the death of the servant the fact that fellow-servants of such servant may have been negligent, will not relieve the master from responsibility for the damages of which the master's negligence was the cause.

4. EVIDENCE—*when habits of care competent.* If no eye-witness saw the accident in its entirety which resulted in the death of the plaintiff's intestate, evidence of the habits of carefulness of such deceased is competent as bearing upon the question of his exercise of ordinary care at the time of the accident in question.

5. INSTRUCTIONS—*upon measure of damages in action for death caused by alleged wrongful act, approved.* In this case an instruction is approved which tells the jury that:

"If they find for the plaintiff then in estimating plaintiff's damages they may take into consideration the prospective life of said George Ross, his opportunities, abilities and habits with reference to the making and saving of money to be estimated by the jury from all the facts and circumstances proved, and the jury may assess such damages as from the evidence will be a fair compensation for the pecuniary loss suffered by the next of kin, if any, from the death of deceased."

6. PLEADING—*aider by verdict.* If a particular allegation be not contained in the declaration its absence will be cured after verdict if proof has been made of such facts not alleged.

7. VERDICTS—*when not excessive. Held*, in an action for death caused by alleged wrongful act, that a verdict of $7,500 was not excessive where it appeared that the deceased at the time of his death was a man 30 years of age, steady, industrious, sober and healthy, had been earning from $85 to $110 per month and for years had been contributing to his mother from $25 to $45 per month, etc., the next of kin being the parents, brothers and sisters of the deceased.

THOMPSON, P. J., dissenting.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Rock Island county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed June 10, 1909.

JACKSON, HURST & STAFFORD, for appellant; BENJAMIN S. CABLE, of counsel.

LUDOLPH & REYNOLDS and S. R. KENWORTHY, for appellee.

288    APPELLATE COURTS OF ILLINOIS.

Ross v. Chicago, Rock Island & Pacific Ry. Co., 149 App. 286.

MR. JUSTICE WILLIS delivered the opinion of the court.

Appellee sued appellant to recover damages sustained by the death of George H. Ross, deceased, by the next of kin, being the parents, brother and sister.

The death of the deceased is alleged to have been caused by the negligence of the appellant on March 13, 1905. This case was before this court at a former term by an appeal, prosecuted by the present appellant, from a judgment in favor of appellee for $6,000 and the opinion rendered on that appeal reversing the judgment because of error in instructions and remanding the case for a new trial may be found in 136 Ill. App. 518. On the second trial a verdict was returned and judgment rendered in favor of appellee for $7,500. From that judgment this appeal is prosecuted.

No change has been made in the pleadings since the former appeal, and the facts disclosed by the evidence are substantially the same as appear in the statement of facts on the former appeal.

The deceased was an employe of appellant in its switch yards at Rock Island. The negligence alleged in the declaration in brief is that it failed and neglected to have a reasonably safe and sufficient headlight on a locomotive switch engine, by reason of which negligence the deceased, while in the exercise of due care in the performance of his duties, was by a collision thrown from a car and killed. Demurrers to the original declaration and to an additional count were overruled, after which appellant filed pleas and the issues were joined.

It is contended by counsel for appellant in their argument that the court erred in not sustaining the demurrer to the counts of the declaration. There was no motion in arrest of judgment in the trial court, and there is no assignment of error filed in this court having any reference to the pleadings or to any action of the trial court thereon, therefore the questions argued in that respect are not before us for review.

It is also insisted that the verdict cannot be sustained under the evidence. The evidence shows that the deceased was a switchman in the employ of appellant. He is described as the foreman of a switching crew composed of the foreman, an engineer, a fireman and a switchman. The yard in which the crew worked is a double yard composed of two yards lying adjoining and parallel with each other. They cover a strip of ground extending east and west about 1,400 feet along the river front in Rock Island and between 200 and 300 feet north and south. The main track of appellant's railroad runs east and west through the center of these grounds. On each side of the main track is a lead or ladder track. From the south lead track, switch tracks branch off at intervals to the south and west; the west ends of these switch tracks do not connect with any track but end in bumping posts. The south switch yard is known as the Twenty-fourth street yard. The switch yard north of the main track is known as the Twentieth street yard, and the switch tracks in this yard connect with the lead track at both ends. George Ross with his switching crew worked in the Twentieth street yard with engine No. 156, sometimes described as the Twentieth street engine. Charles Ross, a brother of George Ross, was foreman of a crew that worked in the Twenty-fourth street yard with engine No. 106, sometimes described as the Twenty-fourth street engine. These engines, while their work was mainly confined to their respective yards, yet occasionally had to cross over and do some work in the other yard. It was the duty of the foreman to hunt up the cars that were required to be moved, from the many cars that stood on the various switch tracks, and to indicate to the switching crews what cars were to be moved and where they were to be moved to, for loading or unloading or in making up trains. Knight was the switchman with the crew of which George Ross was the foreman. It was Knight's duty to follow the engine, throw switches, couple and uncouple cars; and

at times George Ross did some work similar to that done by Knight. On the night of the injury and on the preceding night the evidence shows that George Ross was working around the yard checking up cars to such an extent that he was not near engine 156, except on two occasions. On the night preceding that of the injury the crew of engine 156, except George Ross, went to the roundhouse, a mile east of the switch yard, for their engine. While near the roundhouse the front or east headlight of that engine burned out and broke the glass in front of the headlight so that the lamp in it would not burn. The foreman of the roundhouse directed that a switchman's lantern showing a white light should be hung beneath the place for the headlight. There was a proper headlight on the rear or west end of the engine, so that when it backed west toward the Twentieth street depot, the yard where George Ross was, it showed a headlight as it approached him. When the engine and crew reached Ross, while the engine was standing under an electric street light and the engine was still east of Ross, he asked why they were so late and was told the headlight had burned out. After Ross was told the headlight had burned out he went into the depot. The proof, however, fails to show either that George Ross was told or saw that the headlight had not been repaired, or that he actually knew or saw that the engine was being run with a common lantern instead of a regular headlight at its east end, or that he was east of the engine that night, so that it does not appear that he must have seen it was working without the east headlight. The engine worked all that night with a common lantern in front in the place of a headlight on its east end. On March 13th this engine was again sent out with its crew, except the foreman, about 7 o'clock, without a front headlight but with a lantern hanging below the broken glass. On this night, Ross was waiting for the engine at the Twentieth street depot and when it came up he gave the crew some instructions; the engine then backed west and Ross

crossed the tracks six to ten feet east of it under the street electric light, followed it west a short distance, and then disappeared amongst the cars on the tracks, attending to his duties. This is the only time Ross is shown to have been east of the engine while the headlight was out. On the night of the injury, engine 106 had been in appellant's Natick yards several miles east of Rock Island and did not return to the Rock Island yards until just before Ross was injured. The crew of engine 106 knew nothing about the headlight being out on engine 156. About 10:30 on the night of the 13th engine 106 came from the Natick yards pushing a string of cars to the Rock Island yards. The train was stopped and the switchman of the crew looked down into the yard west of the viaduct for the headlight of engine 156, the course of business being such that engine 156 went often into the west end of the yard for work customarily done there about that time. The switchman not seeing the headlight of engine 156, a string of cars was cut loose and kicked down the lead track with one man on it to set the brakes. Engine 156 was in the Twenty-fourth street yard on what is called the Peoria house track, with the switch from that track to the lead track open, showing a green light, the engine having gone on the Peoria house track to get a car for train No. 398, that was being made up for Peoria. George Ross had thrown the switch for engine 156 to back its train of cars west on the Peoria house track, and then had gone west. This appears to have been the only time engine 156 was in the Twenty-fourth street yard that night. When Ross went west at that time he was going to call the crew, who were in the caboose, for train No. 398. After engine 156 had accomplished what it went on the Peoria house track for, Ross returned from calling the crew for train 398 and gave the signal to the switchman and the switchman passed it to the engineer of engine 156 to move east, and Ross got on the side of the west car of the string of cars attached to this engine. The switchman on the cars

292    APPELLATE COURTS OF ILLINOIS.

Ross v. Chicago, Rock Island & Pacific Ry. Co., 149 App. 286.

attached to engine 156 could see that Ross was on the west end of this train from seeing his lantern. As engine 156 was pulling out east, from the Peoria house track, it collided with the west end of the string of cars that had been kicked down the lead by engine 106. The switchman on the string of cars saw the engine without the headlight, with a lantern in place of a headlight, but too late to stop the cars and avoid the collision. The collision knocked the car Ross was on off its trucks and Ross was thrown to the ground and injured to such an extent that he died shortly thereafter.

There is little conflict in the evidence. The burden was on appellee to show that the deceased did not know that engine 156 was being run without the front headlight. Swift & Co. v. Gaylord, 229 Ill. 330. He being dead, the only proof available is proof of the circumstances surrounding the transaction and conversations connected with the work. The proofs show that on the 12th of March Ross was told that the headlight had burned out, and that that was the reason for the delay. It does not show that he was told at that time that it had not been repaired, nor does it show that he was east of the engine so as to have necessarily seen that it was not repaired and that its place was supplied by a small switchman's lantern. The only time he is shown to have been east of the engine, when the headlight was out, was when he crossed the track in front of it on the night of the 13th, when it backed from the Twentieth street depot from under a street electric light. It is a debatable question whether the absence of a headlight would be so obvious that a person simply crossing the track in front of an engine under a strong street light must have observed its absence. The proof clearly shows that appellant knew of the broken headlight and that the engine was run supplied at its front end with only an ordinary lantern, because the foreman of appellant's roundhouse sent the engine out and directed it to be used with the lantern instead of a headlight. It was a question of

fact for the jury to pass upon, from all the evidence, whether the deceased knew of the defect and was in the exercise of ordinary care and whether the appellant was guilty of the negligence alleged in permitting an engine to be used in the dangerous work of switching without a headlight. We cannot say on a review of all the evidence that the jury were not reasonably justified in finding the issues for the appellee.

It is further contended that the deceased was killed because of the negligence of fellow-servants. If it be conceded that the switching crew with engine 106 were fellow-servants with the deceased, and that the crew of that engine were negligent in "kicking" the cars down the lead track while the switch to the Peoria house track was open and engine 156 was coming out on that track to the lead track, still it is a question of fact whether the negligence of the appellant in permitting its engine to be used without a headlight but with only an ordinary lantern, or the negligence of the fellow-servants, was the proximate cause of the death of the deceased. If the negligence of appellant was the efficient cause of the death of deceased, then the fact that fellow-servants of the deceased may also have been negligent will not relieve appellant from responsibility for the damages of which its negligence was the cause. "The law is well settled that although the negligence of a fellow-servant of appellee contributes to his injury, still, if such injury was caused, in part by the negligence of appellant, the appellee may recover, as the general rule is that where a servant is injured through the part negligence of the master and a fellow-servant, the master cannot escape liability on the ground that the fellow-servant also contributed to the injury." Kennedy v. Swift & Co., 234 Ill. 606; North Chicago Street R. R. Co. v. Dudgeon, 184 Ill. 477; Malleable Iron Co. v. Dillon, 206 Ill. 145; C. & A. R. R. Co. v. Averill, 224 Ill. 516. The jury were fully instructed on this ques-

tion at the instance of appellant and, there being evidence that appellant was clearly negligent, we would not be justified in saying that the jury was not right in its finding.

It is also insisted that the court erred in admitting evidence as to the deceased's habits of carefulness. This question was disposed of in the former opinion of this court and the evidence held proper "because no one saw him at the time of the collision, and no one knew just what he was doing at that time or just how he came to be hurt." His lantern was seen on the side of the car but the deceased himself was not seen except as he was supposed to be there from the presence of his lantern; and even the lantern was not seen at the instant of the collision. There was no error in the admission of the evidence as to his careful habits.

It is urged there was error in giving the second instruction given at the request of the appellee. The instruction told the jury that if they "believe from the evidence that the said defendant failed to use reasonable care in supplying the engine in question on the night in question with a reasonably safe and sufficient headlight as stated in the declaration in this case and that said engine was not supplied or equipped with a reasonably safe and sufficient headlight but that the headlight on said engine by reason of the defective and broken condition of the headlight fixture on said engine would not burn and was then out and that plaintiff's intestate, George Ross, had no knowledge that said engine was not so equipped or that the light on said engine was out * * * and by the exercise of due care on his part would not have known that it was out, if it was so out * * * and if you further believe from the evidence that the proximate cause of said collision was the failure of said defendant to provide the engine in question with a reasonably safe and sufficient headlight, if it was not so equipped", etc. It is argued that there is no statute requiring a headlight upon engines. The in-

struction left it to the jury to say whether such facts constituted negligence. Appellee insists that the instruction is proper and that it was given on the former trial and that the criticism of the instruction now made was not urged on the former appeal. The record of the former appeal is not in this record and we have no means of knowing whether any question was raised concerning such instruction if it was given on the former trial. The instruction however is not erroneous for any reason urged by appellant.

It is urged that the third instruction is erroneous. This instruction tells the jury that "if they find for plaintiff then in estimating plaintiff's damages they may take into consideration the prospective life of said George Ross, his opportunities, abilities and habits with reference to the making and saving of money to be estimated by the jury from all the facts and circumstances proved, and the jury may assess such damages as from the evidence will be a fair compensation for the pecuniary loss suffered by the next of kin, if any, from the death of deceased." The contention of appellant is that "the jury are not told they must do this from the evidence in the case." The instruction clearly tells the jury such estimate is to be made "from all the facts and circumstances proved" and "as from the evidence will be a fair compensation". We see no error in this instruction.

Complaint is made of the refusal of the third and fourth instructions asked by appellant. These instructions were framed to tell the jury that there could be no recovery; that they must not consider the first additional count or the original declaration because it was not alleged that the deceased did not know that the headlight on the front of the engine was not burning at the time of the accident. There was proof tending to show that he did not know that fact. The question raised is one of pleading that should have been raised in some other way; there being proof on the question, the verdict cures the defect in the pleading.

296 APPELLATE COURTS OF ILLINOIS.

Ross v. Chicago, Rock Island & Pacific Ry. Co., 149 App. 286.

Ide v. Fratcher, 194 Ill. 552; Sargent Co. v. Baublis, 215 Ill. 428.

The remaining question argued is that the judgment is excessive. The deceased was a man thirty years of age, steady, industrious, sober and healthy. He had been earning from $85 to $110 per month, and for years had been contributing to his mother from $25 to $45 per month, and saving some money by depositing it in a bank. The next of kin were the parents, brothers and sisters of the deceased. When there are amongst the next of kin lineal heirs such as parents or children "the amount to be recovered is what the statute regards as the pecuniary value of the addition to such estate left as the deceased, in reasonable probability, would have made to it, and left, if his death had not been so wrongfully caused. It is to be estimated by the jury from all the facts and circumstances proved, his prospect of life, and his means, opportunities, ability and habits, with reference to the making and saving of money or money's worth." C., P. & St. L. R. R. v. Woolridge, 174 Ill. 330. We are not disposed to say $7,500 is an excessive compensation for the loss to the means of support of the parents resulting from the death of such a man as the evidence shows the deceased to have been. Finding no error in the case the judgment is affirmed.

*Affirmed.*

Mr. Presiding Justice THOMPSON, dissenting.

In order for the appellee to secure a verdict it was necessary that it should be shown by a preponderance of the evidence that the deceased did not know that engine 156 was being run without the front headlight. Swift & Co. v. Gaylord, 229 Ill. 330. He being dead, the only proof available is proof of the circumstances surrounding the occurrence and conversations connected with the work. The proof shows that the deceased was the foreman of the switching crew of engine 156. The sole business of the crew was moving

cars from place to place either for the purpose of being loaded or unloaded, or taking them out of trains or placing them in trains. The deceased was the member of the crew who hunted up the cars that were to be moved, and gave the orders to the balance of the crew as to the moving of the cars. The evidence is very limited in amount as to the work that was done by the switching crew of engine 156 during the whole of the night of March 12th and concerns only the moving of a very few cars on the night of the 13th. The form of a locomotive headlight is a matter of common knowledge; the sides and back of the headlight are opaque and at the back of the headlight behind the lamp there is a reflecter which focuses the light and throws it forward in front of the engine. The lamp cannot be seen in the headlight except by a person somewhat in front of the engine; all that can be seen by a person at the side of the headlight or behind it is the reflected light in front. The proof shows that engine 156 was run with an ordinary lantern hung about sixteen inches below the front of the headlight, the lantern being uncovered and clearly visible to a person at the side of the headlight or back of it until a point would be reached where the angle of the boiler head would conceal it. The common lantern hung in front of the engine below the frame of the headlight would attract the attention of an ordinary person at the side of the engine. To a railroad man it would be very noticeable because of its very unusual occurrence. The lantern was so obvious that it could not but attract the attention of a person at the side of the engine as it would back past a person standing by its side. The deceased stood by the side of engine 156 at the Twentieth street depot while it backed past him; then he crossed over the track a very few feet in front of the engine and turned and followed the engine a short distance with this lantern hanging in front of him. It would seem impossible for a man with the ordinary faculties, in the exercise of ordinary care, not

298    APPELLATE COURTS OF ILLINOIS.

McFadden v. Chicago, Rock Island & Pacific Ry. Co., 149 App. 298.

to see this lantern and not to know of the defective headlight. It was so obvious and open to observation and the opportunities to know of the defect were such that the deceased was chargeable with knowledge of the defect. Armour v. Brazeau, 191 Ill. 117; L. E. & W. R. Co. v. Wilson, 189 Ill. 95; Swift & Co. v. Zerwick, 88 Ill. App. 558. The deceased knowing of the defect and continuing to work with it, assumed the risk, and there should be no recovery. Chichowicz v. International Packing Co., 206 Ill. 349; Herdman Harrison Milling Co. v. Spehr, 145 Ill. 333. From all the evidence—the length of time he worked with the engine giving orders while it was without a headlight, being all the preceding night and several hours that night, the fact that he was in front of the engine shortly before his death and that he walked behind it as it backed away from him—it is apparent that he was a man of ordinary intelligence using his faculties with the opportunities he had to know of the defect, and he must be held to have known of the defect in the engine and to have assumed the risk, and that he was killed because of a risk which he assumed; hence the verdict and judgment should not be sustained. I am of opinion that the judgment should be reversed.