# Joseph Sturonois, Appellee, v. S. Morris and George Davy, Appellants.

## Gen. No. 17,054.

1. INSTRUCTIONS—*when motion to direct verdict is properly denied.* When there is evidence fairly tending to support all the material averments in the declaration and sufficient, standing alone, to warrant a verdict for the plaintiff, defendant's motion to direct a verdict is properly denied.

2. MASTER AND SERVANT—*where motion to exclude evidence for variance is properly denied.* In an action for personal injury from the falling of an iron ball used to break scrap iron, evidence that the foreman, after placing plaintiff at work about the ball, started the horse while the trip rope was caught or in a position where it would be likely to catch and release the ball, so it would fall on plaintiff, is sufficient to support a count averring that the foreman so negligently managed and handled the derrick and rope that the ball became detached and fell on plaintiff, and defendant's motion to exclude the evidence for variance is properly denied.

3. MASTER AND SERVANT—*sufficient averment to negative knowledge of danger.* In an action for personal injury from the falling of an iron ball used to break scrap iron, a count which avers that the plaintiff did not know and could not by the exercise of ordinary care have known that the act of negligence was to be performed by defendant's foreman, sufficiently negatives knowledge or opportunity to know of the impending negligent act.

4. MASTER AND SERVANT—*where count states cause of action sufficient to prevent the running of the statute of limitations.* In a personal injury action, where the declaration avers that it was the duty of defendants to manage certain machinery with reasonable care for the safety of employees, that they failed in that duty and plaintiff was injured, there is a sufficient statement of a cause of action to prevent the running of the statute of limitations against an additional count.

5. PRACTICE—*proper way to take advantage of improper argument of counsel.* Where counsel desires to take advantage of an improper argument by his adversary, he should first object and obtain a ruling of the court, to which he may take exception if adverse, there being no such thing as exception to the argument.

Appeal from the Circuit Court of Cook county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed February 19, 1913. Rehearing denied March 3, 1913.

Winston, Payne, Strawn & Shaw, for appellants; John Barton Payne, John D. Black and John C. Slade, of counsel.

David K. Tone and Henry M. Ashton, for appellee.

Mr. Justice Graves delivered the opinion of the court.

Appellants, by the name of S. Morris & Company, were, at the time of the occurrences here involved, scrap iron dealers and maintained yards to which scrap iron gathered by their employees was brought and broken up. Appellee was a teamster in the employ of appellants. The iron was broken by means of a large pear shaped iron weight, weighing from 1,500 to 1,800 pounds, which was elevated by means of pulleys and ropes to the desired height, depending on the size of the scrap iron to be broken, and was then released by means of a cord attached to a trip lever and manipulated by an employee. It was the practice, when the weight was at the proper height, to start it swinging before it was released and to release it when, in swinging, it assumed a position where it would fall on the scrap iron to be broken. The pulleys were operated by horse power. It was the custom of the teamsters, when called upon to do so, to assist in the operation of breaking scrap iron. The evidence fairly tends to show that on the day in question appellee came into the yards with the horse he was driving and was instructed by the foreman of appellants in charge of the work there at the time to assist another employee, spoken of as "Charley," in removing from the large iron weight, scraps of iron then partially covering it, which appellee proceeded to do, and that while he was so engaged the foreman caused the horse hitched to the rope by which the weight was raised to start and the weight

to be raised; that by some means the trip rope, by which the weight was released from the elevating appliance, was held down so that the weight was released, and either fell upon appellee, or near to him and rolled upon him, crushing one of his legs, so that the same was necessarily amputated. Appellee secured a verdict and judgment for $7,500. This is an appeal from that judgment.

So far as the claim of appellants that the court should have allowed their motion to direct a verdict is concerned, it is sufficient to say, in disposing of such a motion, it is not for the court to weigh the evidence. There is evidence in the record fairly tending to support all the material averments in the declaration and sufficient, standing alone, to warrant a verdict for the plaintiff. Under such circumstances it would have been error for the court to have directed a verdict for the defendant. Libby, McNeil & Libby v. Cook, 222 Ill. 206.

The contention that the verdict is contrary to the weight of the evidence is likewise without merit. In each case, where a controversy of fact arose, appellee supported his contention by his own testimony and by the testimony of the witness "Charley," who was in immediate charge of the appliance at the time in question, while in opposition to that appellant produced only the testimony of the foreman, whose act in starting the horse without notice to appellee is claimed by appellee to have caused the injury.

While it is true the testimony of "Charley" is somewhat weakened by evidence tending to show that he had made contradictory statements concerning the occurrence, the circumstances, under which it is claimed such contradictory statements were made, were such as might well have caused the jury to believe he did not make them. Persons representing appellants, who did not speak the Lithuanian lan-

guage, went to the witness "Charley," who spoke the Lithuanian lanugage only, and put certain questions to him through the foreman, acting as an interpreter, who says he then translated his answers, or at least part of them, into the English language, and that the same was written down in the form of a statement of how the accident happened, which statement was then signed by "Charley." The foreman interpreter testified that "Charley" made the statements incorporated in the writing signed. "Charley" testified he did not make such statements and that the same are not true. Again appellants claim that after a former trial "Charley" admitted, in the presence of several witnesses, that he had testified falsely at that trial. One witness testified he did so then state, while he and another witness, a relative of his, testified he did not. His testimony at the two trials seems to have been substantially the same as to all material facts. It was for the jury to determine whether the witness had made the contradictory statements; whether he had been impeached and on the whole evidence whether appellee had proved his case by a preponderance of the evidence or not. The jury believed the witnesses for appellee and disbelieved the witness of appellants, and we think the finding is amply supported by the evidence.

After the motion of appellants for a peremptory instruction was denied, they made a motion to exclude all the evidence on the ground of variance, which motion was also denied. The variance claimed was that in the first count of the declaration it was charged that it was the duty of appellants to manage the machinery connected with the iron ball with reasonable care for the safety of the employees; that they failed in that duty, and that the ball was inadvertently precipitated from its suspension; that the additional count charged that the foreman so negligently man-

aged and handled the derrick and the rope used in connection with it that the ball became detached and fell and struck appellee; that the proof offered by appellee tended to show that after the foreman had directed appellee to assist in removing scrap iron from the ball the foreman whipped the horse, causing him to start up, resulting in the trip rope catching in the scrap iron and throwing off the trip and the falling of the ball. The mere statement of the contention shows its fallacy. Whatever may be said as to the first count, the evidence that the foreman, after placing appellee at work about the iron ball, whipped the horse and caused him to start up, while the rope was caught, or in a position where it could or would be likely to catch, in the scrap iron and release the ball, so it would fall on appellee, is certainly evidence tending to support the charge in the additional count that the foreman so negligently managed and handled the derrick and the rope used in connection therewith that the ball became detached and fell upon appellee. In order to support the charge of negligently "handling" the derrick and rope attached to it, it is not necessary that the evidence should show the actual manual manipulation of the derrick or rope by the foreman. If the foreman, either with his own hand or by an order to a servant or by starting the horse either with a whip or by word of mouth, put the machinery in motion in a way to render it dangerous to appellee in the position in which he had been placed at work by the foreman, he was guilty of "negligently handling" the derrick, and if he started the ball upward by such means, while the trip rope was caught, or in a position where it was likely to cause the ball to be released and fall, it was quite as much a negligent handling of the rope as if he had taken it in his hands and had carelessly pulled it when appellee was in a place of danger. The motion of appellants to exclude the evidence of appellee for variance was properly denied.

Appellants contend that appellee is not entitled to recover under the original count, because there is no charge in it of any specific negligence on the part of appellants; no charge that appellee's duties required him to be where he was injured; that he was rightfully there or that appellants knew he was where the operation of the derrick would be likely to injure him, or that he did not have equal opportunity with appellants to know of the danger, and that he is not entitled to recover under the additional count, because it sets up an entirely new cause of action, and was filed after the statute of limitations had run against the cause of action stated in it, and because it contains no averment that appellee did not have equal opportunities with appellants for knowing the dangers arising out of the manner in which the work was done at the time of the accident. The acts of negligence charged against appellants in the additional count were affirmative acts of the foreman, performed by him concurrently with the injury. It is not charged that the place or the appliance was inherently dangerous, but that the manner of the operation was negligent and that such negligent operation caused the injury. The count also contains the averment, in substance, that appellee did not know and could not by the exercise of ordinary care have known that these acts of negligence were to be performed by the foreman of appellants. In the case of Republic Iron & Steel Co. v. Lee, 227 Ill. 246, cited by appellants, the negligence complained of was in allowing a certain belt connecting certain machinery with the power plant to become and remain in a defective condition, and the declaration averred that the plaintiff knew of the defective condition of the belt, notified the defendant of it and was ordered to continue to work, which he did under the promise of defendant to repair. The proof showed he knew nothing about the

defect and the court held that on that state of facts the plaintiff could not recover without averring that he did not know of the defect. That was an entirely different situation from the one here presented and that case is not in point here. We think the count in question sufficiently negatived knowledge of appellee and the opportunity of appellee to know of the impending negligent act charged to entitle him to recover. The complaint that the statute of limitations had run against the case made by this additional count, we think, is not sound. In the case of Geo. B. Swift Co. v. Gaylord, 229 Ill. 330, the Supreme Court said:

"In cases of this kind the cause of action is the act or thing done or omitted to be done by one which confers the right upon another to sue, in other words, the act or wrong of the defendant towards the plaintiff which causes a grievance for which the law gives a remedy."

The original count in the case at bar was not drawn by the attorneys who now represent appellee and is not a model of common-law pleading, but we think sufficiently sets out a duty to appellee, a failure to perform that duty and a consequent injury to appellee. This, we think, sets out a good cause of action. McAndrews v. Chicago, L. S. & E. R. Co., 222 Ill. 232. In other words, we think the first count shows a wrong on the part of appellants toward appellee which caused a grievance for which the law gives a remedy. The judgment in the case of Republic Iron & Steel Co. v. Lee, *supra*, was reversed and remanded, because the declaration was not sufficient to sustain the judgment. After the statute of limitations had run an amendment of the declaration was allowed, in which it was averred that the plaintiff did not know and could not have known of the defective condition of the belt. A plea of the statute of limitations was interposed and a demurrer to it was sustained. The Supreme Court was later called upon to pass upon the correctness of

that ruling and sustained the Circuit and Appellate Courts. See Lee v. Republic Iron & Steel Co., 241 Ill. 372. In passing upon the identical question here involved that court there quoted with approval from the case of Geo. B. Swift Co. v. Gaylord, *supra,* the language above used. This subsequent action of the Supreme Court in the Lee case is quite significant, in view of the fact that the original case is one of the cases chiefly relied on by appellants to show the insufficiency of the declaration in this case and in view of the further fact that, while the Supreme Court held, when the case was up on the sufficiency of the declaration, that it was insufficient to support a judgment, and when it was up the last time that, while it was originally insufficient to support a judgment, it was sufficient to prevent the running of the statute of limitations against a cause of action properly stated in an amendment. Without passing upon the sufficiency of the first count in this declaration to support a judgment, we are satisfied it is a sufficient statement of a good cause of action to prevent the running of the statute of limitations against the additional count. It follows that the demurrer to the plea of the statute of limitations filed to the additional count, as amended, was properly sustained.

A number of rulings of the court on giving and refusing instructions are complained of by appellants. An analysis of these instructions would extend this opinion to an unwarranted length. We have carefully examined each of these instructions and considered the contention of counsel as to the rulings of the court thereon and find no reversible error in such rulings.

Lastly, appellants insist that the judgment should be reversed, because of the conduct of counsel for appellee in his argument. We have carefully examined all of the argument of counsel contained in the record, and we find that in several instances counsel

for appellants interrupted counsel for appellee with the expressions, "If the court please I take exception to Mr. Tone's argument," "I take exception to that," "to that statement I take exception," and like expressions. It is no longer an open question of practice how counsel may take advantage of an improper argument by his adversary. He must first *object*, next insist upon and obtain a ruling of the court on his objection, then, if the ruling is adverse, he is entitled to an exception to the ruling. There is no such thing known in our practice as allowing an exception to the argument of counsel. Exceptions are preserved to the action of the court, not to the action of counsel. North Chicago St. Ry. Co. v. Leonard, 167 Ill. 618; City of Salem v. Webster, 192 Ill. 369.

Appellants, having failed to pursue the well recognized and beaten path by which the improper conduct of counsel in their argument can be taken advantage of, the question, as to whether there was any such improper conduct in this case, is not considered.

Finding no reversible error the judgment of the court below is affirmed.

*Judgment affirmed.*