## Paul Bonato, Administrator, Appellee, v. Peabody Coal Company, Appellant.

1. EVIDENCE—*upon what expert testimony competent.* In an action for personal injuries, *held*, that it was competent to admit expert testimony as to whether or not ice would be expected to form in an air chamber constructed as was the one in question in this case.

2. DAMAGES—*in action for death caused by wrongful act.* The law presumes where the deceased left a widow and children that there is a pecuniary loss and upon the question of this pecuniary loss to the widow and children it is proper for the jury to take into consideration the ages of the parties sustaining such loss in determining the amount thereof.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Montgomery county; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the May term, 1909. Affirmed. Opinion filed May 28, 1910.

ARTHUR M. FITZGERALD and GEORGE B. GILLESPIE, for appellant; UNDERWOOD & SMYSER, LANE & COOPER and HAMLIN, GILLESPIE & FITZGERALD, of counsel.

EARLY & WILLIAMSON, for appellee; T. M. JETT, T. A. SNELL and D. R. KINDER, of counsel.

MR. JUSTICE PHILBRICK delivered the opinion of the court.

This is an action brought by appellee against appellant company for the death of plaintiff's intestate, Nicola Bonato. The trial below resulted in a judgment against appellant for $2,000; to reverse which judgment this appeal is prosecuted.

The deceased was in the employ of appellant company, which was engaged in sinking a coal shaft near Nokomis, Montgomery county. The shaft was twenty-seven feet long, ten feet in width and divided into three compartments. Across the west end was constructed an air chamber, extending the full width of the shaft and about twenty-two inches wide, the balance of the shaft was divided into two hoisting compartments, only one being used at a time and the one not in use being covered with boards. These two compartments were about equal size. The air chamber was partitioned off and constructed of shiplap for the purpose of making the same as near air tight as possible; the inside of this chamber was a smooth surface. This air chamber was connected with a fan located a short distance from the shaft by means of a curved hood or air course through which the air was drawn from the shaft. The fan and air chamber were used for ventilation purposes and the machinery for running the fan was operated by steam and enclosed in the building about thirty feet from the shaft. The boilers furnishing the steam were located in a building near the fan room but farther from the shaft. The fan was so operated as to draw the air

up the air chamber instead of forcing it down and the only way in which the air could move was from the bottom up. The air chamber was not completed to the bottom of the shaft and the partition between the other compartments was finished to within about twenty feet of the bottom of the shaft. This shaft was being constructed under the supervision of one Patterson, superintendent of the mine, and the men were working continuously day and night, divided into three shifts. Work was begun on the shaft December 12, 1906. Plaintiff's intestate had worked on one of these shifts all of this time.

On the morning of the accident there had been some ice in the hoisting chamber nearest to the air chamber. This was removed before proceeding with the work. During the construction of the shaft some water had been encountered which had run through from the outside and down the inside of the shaft. There was more of this water at the end of the shaft where the air chamber was located than at other places. The evidence is conflicting as to the presence of steam in the air chamber; formations of ice had been known to exist in the hoisting chambers prior to this time; and only a short time before the accident an inspection was made and ice removed from the bottom of the air chamber.

The three shifts in which the men were working were each led by what was known as a shift boss. The leader of the shift in which Bonato was working was Mike Riley, who controlled and directed the work.

The declaration contains two counts of common law negligence, the negligence charged being a failure to provide a reasonably safe place in which plaintiff's intestate might perform his work; also in failing to inspect the air chamber and discover ice which had formed in the air chamber and to remove the same.

The evidence discloses that Riley was informed by the leader of the shift which quit before the shift in which plaintiff's intestate went to work on the morning of the accident that there was ice in the air chamber. The manner in which the air chamber was constructed, afforded no means of obser-

vation by the workmen and there was no way of ascertaining whether ice was in this chamber except by a special inspection.

On the morning of the accident the shift with which the deceased was at work, went into the shaft, which was then in loose shale, and arranged for some blasting and while there was directed to keep to the east side of the apartment on account of there being some ice formed in it. After the blasts were set the party went to the top of the shaft. After the blasts were fired they again descended into the shaft and went to work trimming up and shaping up the edges of the shaft and cleaning out the loose shale. The deceased was working near the air chamber and while so at work several tons of ice fell from the air chamber and crushed him so that he died within a few minutes after being taken out of the shaft.

The causes assigned for the reversal of this cause by appellant are that the deceased was not in the exercise of due care and caution for his own safety; that the evidence fails to show that appellant had actual knowledge of the formation of the ice in the air chamber; that the intestate's death was caused by a mere accident without fault on the part of appellant; that the air chamber was constructed in the usual, customary and proper method of constructing an air chamber for the purpose for which this was constructed and there was no negligence therein on the part of appellant; that the accident which caused intestate's death was one of the ordinary risks of employment assumed by deceased. Also that the court erred in giving on behalf of appellee instruction No. 4, and that this instruction ignores the doctrine of assumed risk and the question of due care. Also that the evidence admitted on behalf of appellee wherein the witnesses Linton and Curtis were permitted to give the dimensions of the shaft at another mine and also because the court permitted appellee to show the ages of the minor children.

The witnesses, Linton and Curtis, were used as experts upon the question as to whether or not ice would be expected to form in an air chamber constructed as this was.

Upon the contention that the evidence given by Linton and Curtis regarding the dimensions of the shaft at Sawyerville there was no error. These witnesses were used as expert witnesses regarding the question as to whether appellant should have expected or had reasonable grounds to believe that ice was accumulating in the air chamber and their information regarding this matter was derived from their experience and knowledge in connection with various shafts and it was not error to permit them to give in their testimony the dimensions of shafts of which they had had experience and knowledge. The evidence was proper for the purpose of permitting the jury to determine what weight should be given to the testimony of these experts.

Upon the contention that the court erred in permitting proof of the ages of the minor children left by deceased, the law presumes where the deceased left a widow and children that there is a pecuniary loss and upon the question of this pecuniary loss to the widow and the children it is proper for the jury to take into consideration the age of the parties sustaining such loss in determining the amount thereof. This evidence has been held to be proper in Swift Company v. Gaylord, 229 Ill. 330, and Goddard v. Enzler, 222 Ill. 462.

Upon the contention of appellant that the deceased was not in the exercise of due care and caution for his own safety, this was a question of fact for the jury to determine upon a consideration of all the evidence in the case and by their finding they have found that the deceased was in the exercise of due care and caution for his own safety and upon this question we do not feel justified in disturbing the finding of the jury.

Upon the question as to whether appellant by the exercise of ordinary care might or could have discovered the accumulation of ice in the air chamber and from a knowledge of the condition of affairs as shown by the evidence should by due diligence and caution have expected or had reasonable ground to expect that ice had formed or was forming in the air chamber, was a question of fact for the jury. The ice

had formed, and it was known to appellant that accumulations of ice had occurred in the hoisting chambers, and that it had been necessary at various times to warn workmen against it and to have had it removed. From the conditions as disclosed by this record the trial court properly refused to grant the request for a peremptory instruction and submitted the question to the jury and we cannot say from this record that, upon this question, the finding of the jury is manifestly against the weight of the evidence and are not disposed to disturb the finding of the jury.

On the contention that the deceased assumed the risk of an accident of this character by virtue of his employment, the injury was not caused by reason of anything that was obvious to deceased or that could be readily ascertained by him and was not from any cause which the deceased would be reasonably expected to foresee and it was not one of the assumed risks of his employment and the jury by their verdict so found and we think properly.

Upon the criticism of the appellee's fourth instruction to the jury it is insisted that it eliminated from the cause the questions of assumed risk and due care on the part of the deceased; the injury not having been caused to plaintiff's intestate by reason of any circumstance or condition which appellee's intestate might reasonably have known or by which he could by any reasonable caution have ascertained and not being a reasonable expectation or contingency arising from the work being performed for which appellee's intestate was employed it may be held as a matter of law that the doctrine of assumed risk was not involved in the cause; and the declaration having alleged and averred due care and caution upon the part of appellee's intestate for his own safety, this instruction was properly given and in doing so there was no error.

Finding no error in this record prejudicial to appellant, the judgment of the lower court is affirmed.

*Affirmed.*