Alice A. Synwolt, Executrix of the Last Will and Testament of Edward W. Synwolt, Appellant, v. Otto Klank and Marie Klank, Appellees.

Gen. No. 39,558.

Opinion filed June 21, 1938.

CHARLES C. SPENCER and RICHARD M. SPENCER, both of Chicago, for appellant.

SIDNEY F. BLANC, of Chicago, and J. C. FORBES, for appellees.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This is an action brought by plaintiff, Alice A. Synwolt, as executrix of the estate of her husband, Edward W. Synwolt, to recover damages for his wrongful death. A verdict was rendered by a jury finding defendants Otto and Marie Klank, guilty and assessing plaintiff's damages at $3,250. Defendants' motion for judgment notwithstanding the verdict was sustained and judgment was entered by the trial court in favor of defendants and against plaintiff. This appeal seeks to reverse that judgment. No question is raised on the pleadings.

Plaintiff's complaint charged that defendant Otto A. Klank, while driving an automobile in his own behalf and as the agent of the other defendant Marie Klank, negligently caused the death of plaintiff's testate, Edward W. Synwolt, while the latter was in the exercise of ordinary care for his own safety.

Plaintiff's theory as stated in her brief is that "while the deceased, Edward W. Synwolt, who was a man 71 years of age, on May 21, 1934, was crossing Milwaukee Ave. a concrete highway in the township of Wheeling, Cook County, from east to west, at a place just north of where Milwaukee Ave. meets with River Road, the defendant, Otto A. Klank, drove his automobile in which his wife, Marie Klank, the other defendant, was riding, so negligently that it ran against Edward W. Synwolt and so injured him, that he died as a result of the injuries on May 24, 1934,

and that Synwolt was in the exercise of due care for his own safety."

Defendants' theory is that the evidence shows that the deceased was guilty of contributory negligence as a matter of law and that the defendants were not guilty of negligence. In rendering judgment in favor of defendants notwithstanding the verdict of the jury, the trial judge stated that "in the opinion of the court, the jury was justified from the evidence in finding that the defendants were guilty of negligence, but that in the opinion of the court there was no evidence proving or tending to prove that the deceased was in the exercise of due care for his own safety, and that for that reason the court entered judgment in favor of the defendants notwithstanding the verdict." Thus, the only question presented for our determination is whether under the facts and circumstances in evidence the trial court was warranted in disregarding the verdict of the jury and entering judgment notwithstanding such verdict on the ground that plaintiff failed to prove that the deceased was in the exercise of ordinary care when he received the injuries which resulted in his death.

The evidence disclosed the following facts. The deceased, who was 71 years old at the time of the occurrence in question, was a salesman of janitors' supplies and earned about $25 a week. The accident which resulted in his death occurred on Milwaukee avenue in Wheeling township, Cook county, just north of the point where River road meets Milwaukee avenue. At the place of the accident Milwaukee avenue is a concrete road, 40 feet wide, with 4 traffic lanes, and runs almost straight north and south. Almost immediately south of where the accident happened Milwaukee avenue diverges in a southeasterly direction and at the point of its divergence is joined by River road, also

a concrete highway, which leads into Milwaukee avenue from a slightly southwesterly direction. Synwolt stopped his automobile off the pavement on the east side of Milwaukee avenue, got out of his car, took some brooms from same for delivery to a customer and proceeded to walk in a westerly direction across Milwaukee avenue with the brooms on his back. The defendant Klank was driving his automobile in a southerly direction in the extreme right or west traffic lane of Milwaukee avenue. According to Klank he saw the deceased start to walk across the highway in a westerly direction when his automobile was 150 feet to the north of him and there was nothing between him and Synwolt. He testified that he saw the deceased when the latter had reached about the middle of the highway and that at that time he (Klank) was about 100 feet north of him; that just then another automobile came from behind him and passed his car on its left side; that this automobile, either in passing him or after it had passed him, proceeded south in the third lane from the west, which would be the traffic lane immediately east of the center of the road; that this passing automobile obstructed his view of Synwolt, but that he knew "this man had not crossed the road in front of me"; that the automobile which had passed him continued on to River road; that the next he saw of Synwolt was when "he ran out in front of the car that was passing me up" and in front of his car; that Synwolt "couldn't stop . . . I guess he could not stop running"; that he, Klank, turned his automobile to the right off the road "to avoid him" and struck the deceased after the latter had cleared the road; and that it was the left front bumper of his car that struck Synwolt. Klank was driving his car at a speed of from 30 to 38 miles an hour and after the accident it continued on in a westerly or southwesterly

direction, running into a vegetable stand about 50 feet from where the body of the deceased lay.

In their endeavor to sustain the action of the trial court in entering the judgment in their favor notwithstanding the verdict, defendants do not argue very seriously that Synwolt was guilty of contributory negligence as a matter of law because of any conduct of his after he had reached the center of the roadway in safety, but they urge in effect that he was guilty of contributory negligence *per se* for even attempting to cross the highway. Their position in this regard is shown by the following statement from their brief:

"Counsel's argument on this point is devoted almost exclusively to Synwolt's actions after he had reached the center of the roadway and was in danger of being struck by the 'passing car.'

"We submit, his failure to exercise due care preceded these events, and the dilemma in which he found himself was the direct result of his contributory negligence.

"Synwolt, a man 71 years of age, parked his car on the east side of the road. This road was a busy forty-foot, four-lane, concrete highway in the open country, and Synwolt was charged with knowledge that the law prescribed no speed limit thereon, excepting that a speed in excess of 45 miles per hour is prima facie evidence of negligence. He was a salesman of janitors' supplies and was taking a bunch of brooms to some place west of the highway. In this situation the only safe course, and the thing which any ordinarily prudent man would have done, was to make a 'U' turn and park his car on the west side of the highway. Instead of so doing, he got out of his car and with a bunch of brooms on his back started to walk across this forty-foot highway 'kitty-cornered.' He knew or should have known, had he looked, that cars were

approaching from the north, one of them about 150 feet away.

"These are the facts, uncontroverted, undisputed and stated most favorably to the plaintiff. They speak for themselves and, we respectfully submit, reasonable minds could reach no other conclusion than that Synwolt's conduct was entirely lacking in that degree of care which an ordinarily prudent person would exercise for his own safety. The subsequent events and the precarious position in which he soon found himself furnish but confirming proof of his contributory negligence."

It is idle to urge that the failure of the deceased to make a "U" turn and park his car on the west side of the highway was prima facie evidence of negligence on his part. The right of pedestrians to use the highways running through the country has always been recognized. In discussing this subject in *Blumb v. Getz,* 366 Ill. 273, the Supreme Court said at pp. 276, 277:

"In considering the question of due care on the part of the plaintiff's intestate, it is well to remember that this cannot always be shown by direct proof but that the evidence as adduced by the plaintiff should disclose facts from which it may reasonably be inferred that the plaintiff's intestate was in the exercise of due care. It was not negligence *per se* for the deceased, a pedestrian, to be upon the highway. As a matter of common knowledge, pedestrians upon highways running through the country use, and have a right to use, such highways, as well as the autoist, and both hold a mutual obligation, each to the other, to observe their reciprocal rights."

Thus the deceased unquestionably had the right to cross this highway on foot and in the exercise of due care he had safely reached the center thereof. Klank

had seen him crossing the east half of the roadway and knew that he was at about the center of same when the automobile that passed his automobile obstructed his vision of Synwolt. If this automobile in passing Klank's car traveled in the lane just east of the center of the road as Klank said it did, he must have known that Synwolt was directly in the path of such automobile and in a position of danger without fault on his part. Klank should also have known that with the speeding car bearing down upon him or at least in his direction, Synwolt would if he could and as quickly as he could hurry from the path of the automobile. We think that the deceased acted reasonably under the circumstances. In taking what appeared to him to be the only avenue of escape from the danger confronting him, the deceased ran from in front of the oncoming car across the west half of the highway and cleared same. Klank had notice of Synwolt's precarious position and the course he might be compelled to pursue in seeking safety. Knowing the dangerous predicament the deceased was in, if Klank had exercised the slightest degree of care the acci- dent would not have happened.

Synwolt's situation and conduct brought him well within the rule that if a person without fault on his part is confronted with sudden danger or apparent sudden danger, the obligation resting upon him to exercise ordinary care for his own safety does not require him to act with the same deliberation and foresight which might be required under ordinary circumstances. (*Chicago Union Traction Co. v. Newmiller,* 215 Ill. 383.)

In *McNeill v. Harrison & Sons, Inc.,* 286 Ill. App. 120, in passing upon the power of a trial court to enter a judgment *non obstante veredicto,* it was said at pp. 128, 129:

"The provision of the Civil Practice Act . . . changes the common law and permits either party to move the court for judgment notwithstanding the verdict, if done in compliance with the provisions thereof.

"The court in passing upon the motion must decide whether, as a matter of law, the party requesting the directed verdict is entitled thereto. This provision of the Civil Practice Act . . . must be taken in connection with rule 22 of the rules of practice of the Supreme Court which provides: 'The power of the court to enter judgment notwithstanding the verdict may be exercised in all cases where, under the evidence in the case, it would have been the duty of the court to direct a verdict without submitting the case to the jury.' The statute and rules require the court to be governed by the same rules in passing upon a motion for a judgment notwithstanding the verdict as govern it in passing upon a motion for a directed verdict. The trial court in passing upon this motion has no more authority to weigh and determine controverted questions of fact under the Civil Practice Act than under the Practice Act of 1907. *Illinois Tuberculosis Ass'n v. Springfield Marine Bank*, 282 Ill. App. 14; *Capelle v. Chicago & N. W. Ry. Co.*, 280 Ill. App. 471.

"If it were permissible for a trial judge on a motion *non obstante veredicto* to weigh the evidence and enter a judgment according to his opinion as to wherein lies the greater weight of the evidence, then the right to a trial by a jury would be done away with and the judgment of the court substituted therefor. It is only where there is no evidence as a matter of law to sustain either a plaintiff's or a defendant's claim that a judgment may be rendered notwithstanding the verdict."

The rules which should govern a trial court in passing upon a motion to direct a verdict are well established. In *Hunter v. Troup,* 315 Ill. 293, the court said at pp. 296, 297:

"A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the evidence so demurred to, in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's declaration. In reviewing the action of the court of which complaint is made we do not weigh the evidence, —we can look only at that which is favorable to appellant. *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 id. 188; *Lloyd v. Rush,* 273 id. 489.''

Surely the evidence above set forth viewed in the light of the rules that govern in passing upon a motion for judgment notwithstanding the verdict, as enunciated in the *Hunter* case, precluded the trial court from allowing the motion for such a judgment in the instant case.

In our opinion not only was there sufficient evidence of Synwolt's exercise of due care as to clearly render the question of contributory negligence one of fact for the jury, but there was ample evidence to justify the verdict of the jury.

No error appears or has been urged by defendants that would have entitled them to a new trial if the judgment notwithstanding the verdict had not been entered in their favor.

For the reasons stated herein the judgment of the superior court is reversed and the cause remanded

with directions to enter judgment on the verdict of the jury.

*Judgment reversed and cause remanded with directions.*

FRIEND, P. J., and SCANLAN, J., concur.