Gail B. Ranson, Administrator of Estate of Herschel C. Wallace, Deceased, Appellee, v. Ernest Wilson and John Wilson, Appellants.

Gen. No. 9,558.

Opinion filed May 27, 1948. Rehearing denied July 14, 1948. Released for publication July 14, 1948.

VAUGHT, ROBINSON & FOREMAN, of Jacksonville, for appellants.

WILSON & WRIGHT and EDWARD J. FLYNN, all of Jacksonville, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

Defendants appellants, Ernest Wilson and John Wilson, appeal from a judgment for $3,500 and costs entered against them, based on a jury verdict in favor of the plaintiff appellee, Gail B. Ranson, as administrator of the estate of Herschel C. Wallace, deceased.

On July 21, 1943, Wallace was fatally injured by falling or being thrown from a truck then owned by Ernest Wilson, and being driven on a public highway by his son John Wilson.

The complaint charged that on July 21, 1943, about 5:30 p. m. John Wilson was driving the truck as agent for Ernest Wilson; that decedent was assisting in the hauling of hay by means of the truck and was at all times in the exercise of due care; that (1) defendants negligently and carelessly swerved and turned said truck and otherwise so operated the same that they caused the decedent to be thrown from the truck to the ground, and also thereby negligently operated the truck so that the same passed over the body of the decedent; that (2) the defendants negligently and carelessly drove the truck at a high and reckless rate of speed and negligently neglected to keep the truck un-

der control, but permitted the truck to swerve and turn violently so that the deceased was thrown from the truck; and that (3) the defendants negligently and carelessly drove the truck at a high and dangerous rate of speed that was greater than was reasonable and proper having regard to traffic and use of the way; that as a result decedent was injured and then died; that decedent left a named widow and two minor children as heirs and next of kin, and that the widow and next of kin were thereby deprived of their means of support, and of large sums of money and valuable services which deceased was accustomed to contribute and perform for them.

The answer of each defendant admitted that Ernest Wilson was the owner of the truck and that the same was then being driven by John Wilson, but each answer categorically denied every other allegation of the complaint.

The truck was a 1½ ton truck with dual wheels on the rear. Its platform was about 7½ feet wide, had no sides, and was located about six inches behind the cab. The cab was narrower than the bed of the truck, and the top of the cab was made of steel. It had a rear window. The roadbed, about 20 feet wide, was covered with gravel mixed with oil, and was rough and full of holes. A witness for defendant testified that at or near the place where the truck turned to its left as hereafter stated, there were "large holes," large enough for dual wheels to drop in.

Ernest Wilson and Yates Potter were farmers, living about two miles apart, and exchanged help in farm work. Ernest Wilson was not away from his home on the day in question. The decedent was employed by Roland Reed, another farmer who lived nearby and who also exchanged help with Potter. On July 21, 1943, Reed sent the decedent to the Potter farm to help "put up hay." That day the decedent, together with Clarence Thurman and Eugene West (who were employees of Potter) and the defendant John Wilson,

by means of the truck in question, hauled one or more loads of hay belonging to Potter a distance of about six miles. They were returning from the last delivery of such hay and driving in a southerly direction when the injury occurred about 5:30 p. m. John Wilson was driving. Thurman was seated in the cab at the side of John Wilson. The decedent and West were standing on the front of the platform immediately behind and facing the cab, with their elbows leaning on the back of the cab and with their feet about two feet apart. The decedent was to the right of West. They had ridden in the same position on a prior trip or trips. While they were so riding the decedent fell or was thrown from the truck, the rear wheels of the truck passing over his body, and he died immediately.

John Wilson, being an incompetent witness, was not permitted to testify as to acts preceding the injury.

West testified that they were traveling in the beaten track about twenty miles per hour on the west side of the road; that he did not hear decedent complain about the rough road or the speed of the truck; that the truck then turned to its left and straightened out without any sudden jerk, and at or about this time he, West, looked to his left to look at two young women who were on the sidewalk on the east side of the road, and when he looked back he saw the decedent's heels leaving the bed of the truck as the truck was straightening out.

Thurman testified that the road was full of holes, that while going about twenty five miles per hour the truck cut across from the west to the east side of the road, and he then saw the decedent fall when the truck cut across and straightened up.

Naomi Strowmatt and Pauline Ash were the two young women who were walking on the east sidewalk in a northerly direction. Naomi Strowmatt testified that as the truck approached it was going thirty or thirty five miles an hour, and as it approached it turned to the east, that, as it passed, the driver waved

and she saw the decedent fall off of the truck. Pauline Ash testified that when the truck "got up to where we were the truck followed the turn and followed the path to the east," the driver waved as he went by, and she heard decedent fall after the truck turned and "went back to the middle of the road."

Walter Casson testified that as the truck passed his house he was watching the men on the back of the truck and he saw decedent throw up his hands "like that," and when decedent threw up his hands decedent turned around and went right off on his head and under the truck, and the truck was then going between fifteen and twenty miles an hour.

It is our opinion that the evidence shows that John Wilson in driving the truck was acting as the agent of Ernest Wilson. Defendants make no contention to the contrary. Therefore we will not state the evidence on such subject.

At the request of John Wilson the court submitted to the jury two interrogatories: (1) Was John Wilson just prior to and at time of the injuries complained of in the exercise of ordinary care; and (2) Did deceased just prior and at time of the injury fail to exercise due care and caution for his own safety so that such failure contributed in whole or in part proximately to cause the injury. The jury's answer to each interrogatory was "No."

Defendants contend that the trial court erred in denying defendants' motion for a directed verdict, and in denying defendants' motion for judgment in favor of defendants notwithstanding the verdict.

In passing on a motion for judgment notwithstanding the verdict the rules applicable on a motion for a directed verdict should be applied. The court is required to assume that the evidence favorable to the plaintiff is true. The only inquiry is whether there is any evidence fairly tending to prove the plaintiff's complaint. If there is any evidence fairly tending to prove the complaint, the motion must be denied,

even though the court is of the opinion that a verdict for the plaintiff, if given, must be set aside as against the preponderance of the evidence. (*Synwolt v. Klank,* 296 Ill. App. 79; *Hunter v. Troup,* 315 Ill. 293; *Osborn v. Leuffgen,* 312 Ill. App. 251.)

Under this heading the first contention is that the proofs do not show that at and immediately before the time of the injury decedent was in the exercise of due care for his own safety, but do show that he was guilty of contributory negligence. A court can only determine as a matter of law that the evidence does not tend to show due care on the part of a plaintiff when no other reasonable conclusion can be drawn from the uncontradicted facts and from the evidence that is favorable to the plaintiff. (*Pienta v. Chicago City R. Co.,* 284 Ill. 246, 252; *Thomas v. Buchanan,* 357 Ill. 270, 277.) Decedent and West had ridden in the same relative position on the prior trip or trips, and decedent had a right to assume that John Wilson would drive the truck at a reasonable rate of speed and in a reasonably safe manner considering the condition of the road. The jury might well believe that because of the quickness of the turn on the rough road the decedent did not have an opportunity to try to warn the driver, or regain his balance, and might well believe that because of the noise of the truck it would have been useless for the decedent to cry out to such driver. We cannot say as a matter of law that the plaintiff was guilty of contributory negligence in riding in the position in which he was riding or because he did not do or say anything at the time of or prior to the accident. (See *Lasko v. Meier,* 394 Ill. 71, 80.)

Under such heading the defendants contend that the proofs do not show that the negligence charged, or that the negligence, if any, was the proximate cause of the injury. We do not consider there is any merit to this contention. Assuming as true the evidence most favorable to the plaintiff, it is our opin-

ion that the proofs show such a case of actionable negligence as to justify the jury in finding the defendants guilty.

The next contention is that there was a variance between the allegations of the complaint and the proofs. ·We do not consider there is any merit to such contention or that the same is worthy of discussion. (See *Lasko v. Meier,* 394 Ill. 71, 73, 77.)

It is our opinion that the trial court did not err in denying the motion for a directed verdict or in denying the motion for a judgment notwithstanding the verdict.

The· next contention is that the court erred in not granting a new trial because, (1) the verdict is against the manifest weight of the evidence, (2) the court erred in admitting improper evidence, and (3) the court erred in giving and refusing instructions.

It is our opinion that we cannot properly say that the verdict is against the manifest weight of the evidence.

. Velma Wallace testified that she was the widow of the deceased, that he left two "dependents," namely·, "Randall and Junior,"—two sons. She was then asked the ages of such sons and over objection answered that one was five and one was six. Defendants' motion to exclude the answer was denied.

The statute, known as the "Injuries Act," ch. 70, Revised Statutes [Ill. Rev. Stat. 1945, ch. 70, pars. 1 *et seq.*; Jones Ill. Stats. Ann. 38.01 *et seq.*], says: " . . . in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person.· . . ."

Defendants contend that in a case brought under such Act, the number and ages of the ·family· are not material because the sole measure of damages is how much the deceased would in all probability have added

to his estate had he lived, and that the question is not the loss of the lineal next of kin, but rather of the value of the deceased in a pecuniary way.

Defendants principally rely on *Chicago, P. & St. L. R. Co. v. Woolridge,* 174 Ill. 330, 336, in which the court said: "The number and ages of the family are not material, as has been held, where the relation is lineal, as the sole measure of damages is pecuniary loss,— that is, how much would the deceased, in all probability, have added to the estate had he lived, which amount would not be affected by the number or ages of such kindred, as each would only get his proportionate share as provided by law for the distribution of the personal property of an intestate, without being increased or diminished, as to any one of them, on account of poverty, age or physical condition." In that case an adult child of decedent was permitted, over objection, to testify that he was in a crippled condition and unable to do any work, and was dependent for the support on his father, who was the decedent. The Supreme Court held this was error, and reversed the judgment because of such error and other errors.

In *St. Louis, Peoria & N. Ry. Co. v. Rawley,* 90 Ill. App. 653, the court held it was error to permit a widow, in such an action, to testify that she had several children, the oldest being 17 years and the youngest four weeks old.

In *Pennsylvania Co. v. Keane,* 143 Ill. 172, the trial court, over objection, permitted a widow to testify that the deceased was, at the time of his death, her sole support. After reviewing several prior conflicting decisions the court, at page 175 said: "We take it that the rule deducible from the cases is substantially this: That it is not competent to show what the pecuniary circumstances of the widow, family or next of kin are or have been since the decease of the intestate, but that it is competent to show that the wife, children or next of kin were dependent upon him for

support before and at the time of his death. This view is in consonance with the statute that gives the action, and which provides that such damages shall be given as are a fair and just compensation for the pecuniary injuries resulting from the death to the wife and next of kin of the deceased person. It can not well be said that proof that the wife or next of kin of the deceased were, at and before the time of his decease, dependent upon him for support, or that he was her or their sole support, is wholly immaterial and irrelevant to any point at issue in the case."

In *Pittsburgh, C., C. & St. L. Ry. Co. v. Kinnare,* 203 Ill. 388, 392, the court held that it was not error "to allow proof of the earnings of the deceased and that the wife and children were supported by him."

In *George B. Swift Co. v. Gaylord,* 229 Ill. 330, the court said on page 337: "The third instruction informed the jury that they might take into consideration the reasonable expectation of life of the deceased and of his next of kin in estimating their pecuniary loss by his death, and it is objected that the mere expectation of life was not proper to be considered in this case where there was no legal claim for pecuniary aid, the deceased being an adult and the next of kin his father and mother. If there was an actual loss of pecuniary aid, one element in determining its amount was the length of time such aid might be expected to continue, and while it might be terminated by many contingencies other than the death of the giver or the receiver, yet the probable length of their respective lives was proper to be taken into consideration in estimating the amount."

*Claffy v. Chicago Dock & Canal Co.,* 249 Ill. 210, was an action brought under an act with reference to structural work (pars. 60 to 69, ch. 48, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 45.101–45.110]). Paragraph 69 of such Act provides that "For any injury to person or property, occasioned by any wilful viola-

tions of this act, . . . a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such wilful violation . . . , a right of action shall accrue to the widow of the person so killed, his lineal heirs . . . , or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives.'' In that case the trial court permitted the widow, over objection, to testify that the deceased left surviving him seven children, ranging in age from 22 months to 11 years. In holding there was no reversible error in the record, the Supreme Court said at page 224 of the opinion: ''It would seem that if in an action by a widow under such a statute a jury is authorized to take into consideration whether the deceased left any children it would not be erroneous to prove whether he left any children, for the jury could not take that matter into consideration unless it was proven. The proof in this case upon that question was limited to the number and ages of the children.''

In *Bonato v. Peabody Coal Co.,* 156 Ill. App. 196, 200, the court held that it was proper to admit proof of the ages of minor children.

The undisputed evidence in the present case is that the decedent at the time of his death was aged 29 years, was in good health, had worked regularly as a farm hand, and was earning $50 a month, ''the use of a cow and the use of a horse.'' The plaintiff was, without question, entitled to prove that the decedent left a widow and two next of kin, namely, two children. The jury, in the absence of exact proof, could not help but know that such children must have been quite young. The verdict of $3,500 was very reasonable. In view of all these facts, it is our opinion that, regardless of the apparent conflict in the foregoing de-

cisions, it was not reversible error in the present case to permit proof of the ages of the two minor children. The defendants contend that under the allegations of the complaint it was error to permit the plaintiff to prove that John Wilson by himself,—that is John Wilson only,—was driving the truck at the time in question. There is no merit to this contention. Defendants next complain of the giving and refusing of instructions. We consider it sufficient to say that it is our opinion that the jury were fully and fairly instructed as to the applicable law, and that there was no reversible error in the giving or refusing of any instructions.

The judgment of the trial court is therefore affirmed.

*Affirmed.*