**William E. Saddler, Appellant, v. National Bank of Bloomington, Appellee.**

**Gen. No. 9,583.**

20

Opinion filed May 27, 1948. Rehearing denied July 14, 1948. Released for publication July 14, 1948.

BRANSON WRIGHT, of Bloomington, for appellant.

CASSIDY, SLOAN & CRUTCHER, of Peoria, and COSTIGAN, WOLLRAB & YODER, of Bloomington, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

This is an action by William E. Saddler, plaintiff appellant, against the National Bank of Bloomington, defendant appellee, to recover the alleged loss of $7,500, plus interest, in currency and bonds, which plaintiff claims he placed in a safety deposit box rented by him from defendant, and which he claims were afterwards permitted by defendant, without the consent or approval of plaintiff, to be taken from such box by plaintiff's wife. A jury trial resulted in a verdict and judgment for defendant. The plaintiff brings this appeal.

The plaintiff was married to Elma Saddler on March 15, 1939. Thereafter until December 1945, they lived together as husband and wife, most of the time in Bloomington, Illinois,—except when he was in the military service. They were divorced on December 13, 1945. Since the divorce Mrs. Saddler has married one Fitzgerald, but she will hereafter be referred to as "Mrs. Saddler."

On September 30, 1941, the plaintiff went to the vault of defendant, rented a safety deposit box and paid the rental. The receipt given him was on a printed form, filled out by Nellie G. Roberts, custodian, and, so far as is material, read:

"Received from *Mr. or Mrs. Wm. E. Saddler* . . . rent to *October 26, 1942*, $2.50 . . . for rent of a safe in the vault of this bank.

"The lessor  .  .  .  leases to the undersigned lessee its safe deposit box bearing the above number for a period of one year from the date hereof, renewable in subsequent terms of one year each, upon the same general terms, conditions and agreement as are herein contained, and in the event that a renewal lease in writing shall not be executed and delivered then this instrument shall of itself operate as and be held to be a renewal or successor renewal hereof, subject to the right of cancellation as herein contained.

"The lessor and lessee convenant and agree  .  .  . that said box  .  .  .  is leased subject to  .  .  . regulations as herein provided.

> "The National Bank of Bloomington  .  .  .
> "By *Nellie G. Roberts*, Custodian.
> "Wm. E. Saddler, Lessee.
> "—————————, Lessee.

"———hereby designate and appoint——— as deputy and agent to have access to the box covered by this contract, to take and remove from or add to the contents thereof,  .  .  .  hereby waiving any liability of the lessor arising out of the exercise by the said deputy of any of the powers herein contained.

> ————Lessor.
> ————Lessee.
> ————Deputy."

The signatures were those of Nellie G. Roberts, vault custodian, and of plaintiff. Nellie G. Roberts will hereafter be referred to as "Miss Roberts."

The words "Mr. or Mrs. Wm. E. Saddler" were typed in the blank before the same was executed. The custodian kept a duplicate copy of such receipt for defendant's files.

On the back of such receipt and copy was printed the following:

"8. The liability of lessor in respect to property deposited in said box, is limited to ordinary care in the performance of employees and officers of lessor of their duties and shall consist only of: . . . (b) Allowing no person access to said box except lessee or authorized deputy. . . ."

At that time plaintiff received two keys to the box. Thereafter the box could be opened only by the joint use of a master key kept by defendant and one of the keys given plaintiff. Each time a renter entered a box he or she was required to sign an entry card which was left with and kept by defendant.

On October 5, 1942, plaintiff and his sister, Ada Saddler, went to the vault. Plaintiff then paid the rental to October 5, 1943, and received a receipt therefor, which receipt is the contract sued on. It was identical with the first receipt,—except that the blank form was so filled out as to designate Ada Saddler as deputy, and Ada Saddler signed as deputy. The box had two compartments, and plaintiff testified he then gave his sister one of the two keys and the use of one compartment. On August 20, 1943, Mrs. Saddler first came to the vault and she then signed the defendant's copy of the receipt dated October 5, 1942.

On October 13, 1943, Mrs. Saddler paid the rental for such box to October 26, 1944, and received a receipt which was identical with the receipt sued on, except that it was signed only by Mrs. Saddler as lessee, and she thereby appointed Ada Saddler "our deputy," but Ada Saddler did not sign the same. On October 23, 1944, Mrs. Saddler paid the rental for another year.

The entry cards show that on April 19, 1944, plaintiff entered the box, and that the next time he entered was on October 31, 1945. Such cards show that after April 18, 1944, Ada Saddler entered 22 times, her last entry being on October 20, 1945. Such cards show that Mrs. Saddler first entered on August 20, 1943, that

thereafter in 1943, she entered five times, that her first entry in 1944, was on April 24, that thereafter in 1944, she entered two times and in 1945, entered six times, the last entry being on September 18, 1945.

Plaintiff testified that he did not remember whether when he first rented the box he told Miss Roberts that he was married, that ''I won't say I did, and I won't say I did not,'' that he never told his wife that he had rented or had a safety box, and made no arrangement for his wife to pay renewals, but his sister was to pay renewals, that after renting the box he put money therein from time to time, that he was inducted into the Army on June 14, 1943, and then left his effects, including his key ring and keys, with his wife at his home, and did not get back to Bloomington until the middle of April 1944; that in April 1944, he was stationed at Bucyrus, Ohio, and his wife lived there with him, that on April 18, 1944, he and his wife came from Bucyrus to Bloomington and stayed over night at a hotel, and the next morning he asked his wife, where his belongings were and she said at her mother's home, and he said, ''Where are my keys?'' and she said, ''They must be out at my mother's with your stuff,'' so they drove to her mother's and the wife went in and came out with his key ring with six or seven keys on it, and they then drove to the bank and his wife stayed in the car, that he then opened the box and found it in the same condition as when he last entered it on June 14, 1943, that he then took some money out of the box but left in his compartment $4,000 in currency, a cashier's check for $1,000, and $5,650 maturity value in bonds, that he never kept any record of the moneys in the box but depended on his memory, and never told his wife that he had purchased the bonds, that a day or two later he and his wife returned to Bucyrus and he then packed his wearing apparel and his key ring with the keys on it in a suit case and left the same at Bucyrus with his wife, but did not tell

his wife the keys were in the suit case, that he then went overseas and first returned in October 1945, when he met the wife and spent one night with her in Chicago, and then signed and gave her a waiver for a divorce proceeding which she had filed or proposed to file, that on October 31, 1945, he obtained the key he had given his sister, and by means of such key entered the box and found that his money and bonds had disappeared, that at that time he first saw and found in the box a paper concerning his government insurance, and he then notified the vault custodian of the loss; that he first learned on October 31, 1945, that his wife had been in the box.

By way of deposition, Mrs. Saddler testified that when plaintiff went overseas she knew he had a deposit box, but he never at any time told her that he had one, that she did not know in what bank the box was located, that after he was inducted she received from the government his insurance certificate and desired to put it in a safe place, that at that time she did not know where the box was located, but knew she had "two keys" to the box, which she found in his belongings, that she then went to another bank in Bloomington and there asked if the "key" was to their box, but found the box was not in such bank, that she then went on the same day to the defendant bank and Miss Roberts said "She often wondered why I did not come in," that Miss Roberts then had her sign the receipt dated October 5, 1942, and she gave Miss Roberts the key, that Miss Roberts got the box and gave it to her and she took it into a booth, that she did not then examine the contents of the box, but saw some bonds and cash therein, and she then put the insurance certificate in the box and left, that thereafter from time to time she entered the box and from time to time took therefrom around $4,000 in currency and the bonds and spent the proceeds, that she never gave any of such proceeds to the plaintiff, and that before the plaintiff returned

from overseas she never told him that she had been going into the box. She further testified that prior to the taking of her deposition, neither the plaintiff nor his attorney talked with her about the questions to be asked her.

Ada Saddler testified that shortly after April 19, 1944, she checked the contents of that part of the box kept by plaintiff, and saw therein $4,000 in cash, a cashier's check for $1,000 and bonds for $650, and $5,000 in other bonds in the name of the plaintiff and wife, that at that time the insurance certificate was not there, that she did not learn until plaintiff returned from overseas that any property had been removed from the box and did not know Mrs. Saddler had been in the box, and that her brother never asked her to pay the box rental.

At the time of testifying Nellie Roberts was not in the employ of the bank. She testified that when filling out the receipt dated September 30, 1941, she talked with plaintiff, that "I do not recall what he said with reference to the names that appear at the top," of the receipt, "I don't think he said anything with reference to the script 'Mr. or Mrs. Wm. E. Saddler' that appears thereon, I don't think he said anything, he just signed it," that she asked him "if he wanted his wife on the box and I think he said 'of course, yes'," and she then wrote out the receipt, that before then she did not know whether he was married, that "he said he wanted a joint contract," and never asked her to remove the name of Mrs. Saddler from the receipt, that she also wrote the receipt dated October 5, 1942, and at that time asked plaintiff if he wanted the contract continued, and he said, "Yes, just as it is," that she did not remember whether she then had a conversation with plaintiff with reference to Mrs. Saddler signing the receipt, that she recalled Mrs. Saddler coming in and signing the receipt dated October 5, 1942, but could not say when this was done, but that Mrs. Saddler

came with the key and she told Mrs. Saddler about the contract and give it to her to sign.

On rebuttal the plaintiff testified that Miss Roberts did not ask him on October 30, 1941, if he wanted his wife's name on the box, and that on October 5, 1942, she did not ask him if he still wanted his wife on the box.

Plaintiff contends that the trial court erred in denying his motion for a judgment in his favor notwithstanding the verdict.

In passing on such a motion made by plaintiff the rules applicable on a motion for a directed verdict should be applied. The court is required to assume that the evidence most favorable to the defendant is true. If there is any evidence fairly tending to prove the defense the motion 'must be denied. (See *Hunter v. Troup*, 315 Ill. 293; *Synvolt v. Klank*, 296 Ill. App. 79.).

Under the contract sued on the relation between the plaintiff and defendant was one of bailment, and the defendant was bound to use ordinary care in keeping the deposit box and in not allowing any person access to the box, "except lessee or authorized deputy." As bailee the defendant was bound to exercise such care and diligence in the preservation of the property entrusted to it as every prudent man takes of his own goods of like character. The burden of showing that the defendant exercised such care and diligence was on the defendant. (See *Schaefer v. Washington Safety Deposit Co.*, 281 Ill. 43, 51.) In 6 Am. Jur. p. 489 it is said, "If the depositor's own negligence proximately contributed to the loss, the safety deposit company may not be liable."

It will be noted that the first receipt dated September 30, 1941, and the second receipt dated October 5, 1942, stated that the bank had "received from *Mr. or Mrs. Wm. E. Saddler* . . . . $2.50 . . . for rent," that plaintiff kept a copy of each receipt and never asked that either copy be changed, that Miss

Roberts testified that when she wrote the first receipt plaintiff told her he "wanted his wife on the box," and "wanted a joint contract," and that when Miss Roberts wrote out the second receipt he said he wanted the contract "just as it is." We believe these facts, if true, were perfectly consistent with the conclusion that the plaintiff intended, or led the defendant to reasonably believe that the plaintiff intended, that Mrs. Saddler should be a joint lessee if she desired. It will also be noted that plaintiff testified that when he entered the box on April 19, 1944, just before going overseas, he found the contents in the same condition as when he last entered on June 14, 1943, yet the entry cards show that before April 19, 1944, Mrs. Saddler was in the box six times.

██ ██ It is our opinion that the evidence either shows or fairly tends to show that the defendant used the care required of it in the custody of the box in question, and that the question of whether it used such care and whether plaintiff was guilty of such contributory negligence as to bar a recovery were questions of fact for the jury. Therefore it is our opinion that the trial court properly denied the motion of the plaintiff for such judgment.

Plaintiff next contends that the trial court erred in denying the motion for a new trial.

Plaintiff complains of remarks and rulings of the trial court. We have carefully read and considered such rulings and do not consider that there was any such error therein as to justify a reversal.

██ Plaintiff next contends that the verdict is contrary to the manifest weight of the evidence. It is our opinion that we cannot properly say that the verdict. was contrary to the weight of the evidence.

██ Plaintiff complains of the refusal by the court to give certain instructions requested by the plaintiff and to the giving of certain instructions at the request of the defendant. We consider it sufficient to say that

it is our opinion that the jury was fully and fairly instructed, that the refused instructions were either covered by other given instructions or were otherwise objectionable, and that there was no such error in defendant's given instructions as to justify a reversal.

The judgment of the trial court is therefore affirmed.

*Affirmed.*